```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
JEFFREY M. DRESSEL, D.D.S., P.C.
d/b/a SOUTH BROOKLYN DENTIST,

                Plaintiff,              Memorandum and Order

        v.                              20-CV-2777(KAM)(VMS)

HARTFORD INSURANCE COMPANY OF
THE MIDWEST, INC.,

                Defendant.
----------------------------------X
```

**KIYO A. MATSUMOTO, United States District Judge:**

The plaintiff in this matter, Jeffrey M. Dressel, D.D.S., P.C., doing business as South Brooklyn Dentist ("Plaintiff" or "South Brooklyn Dentist"), brought claims against Hartford Insurance Company of the Midwest, Inc. ("Defendant" or "Hartford Insurance"), related to an alleged breach of a property insurance policy that Plaintiff purchased from Defendant. Defendant filed a motion to dismiss the complaint. (ECF No. 13.) For the reasons herein, Defendant's motion to dismiss is GRANTED.

## Background

This diversity case arises from Defendant's denial of Plaintiff's insurance claim after Plaintiff's business shut down during the COVID-19 pandemic. Plaintiff, a dental office with its principal place of business in Brooklyn, New York, purchased a property insurance policy from Hartford Insurance, covering

1

the time period from July 2019 through July 2020. (ECF No. 1, Complaint ("Compl."), ¶¶ 1, 3, 12; see ECF No. 15, Declaration of Charles Michael, Ex. A., Insurance Policy No. 65 SBA TZ5964 (the "Policy").)[1]

The Policy provided coverage for a loss of business income and for other expenses if there was a suspension of business operations caused by "direct physical loss of or physical damage" to South Brooklyn Dentist's property. (Policy at -039.)[2] Specifically, the Policy stated:

> [Hartford Insurance] will pay for the actual loss of Business Income [that South Brooklyn Dentist] sustain[s] due to the necessary suspension of [its] 'operations' during the 'period of Restoration'. The suspension must be caused by direct physical loss of or physical damage to property at the 'scheduled premises', including personal property in the open (or in a vehicle) within 1,000 feet of the 'scheduled premises', caused by or resulting from a Covered Cause of Loss.

(*Id.*)

In addition, the Policy provided coverage in the event that a "civil authority" "prohibited by order" access to the premises. (*Id.* at -040.) Specifically, the Policy stated:

> This insurance is extended to apply to the actual loss of Business Income [South Brooklyn Dentist]

---

[1] The Policy was not attached to Plaintiff's complaint, but all of Plaintiff's claims are based on an alleged breach of the Policy. The court finds that the Policy was incorporated into the complaint by reference, and may properly be considered in deciding Defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).

[2] Throughout this Memorandum and Order, citations to the Policy cite the page numbers located at the bottom center of the page, with the "HICMW" prefix.

2

>  sustain[s] when access to [its] 'scheduled premises' is specifically prohibited by order of a civil authority as the direct result of a Covered Cause of Loss to property in the immediate area of [South Brooklyn Dentist's] 'scheduled premises'.

(*Id.*)  A "Covered Cause of Loss" was defined as, "RISKS OF DIRECT PHYSICAL LOSS unless the loss is: a. Excluded in Section B., EXCLUSIONS; or b. Limited in Paragraph A.4.[,] Limitations[.]"  (*Id.* at -031.)  A pandemic was not listed as one of the exclusions or limitations.

On March 22, 2020, during the time period that the Policy was in effect, the Governor of New York issued one of several executive orders in response to the global COVID-19 pandemic.  (Compl. ¶ 24.)  Plaintiff alleges that the executive order prohibited it from operating its business.  (*Id.*)  Plaintiff further alleges that Hartford Insurance was required to cover the resulting loss of business income, but that Hartford Insurance refused to do so.  (*Id.* ¶¶ 29-31.)  Plaintiff thus brought a claim against Defendant for breach of contract, and a claim seeking a declaratory judgment that Defendant was obligated to provide coverage pursuant to the Policy.  (*Id.* ¶¶ 25-40.)

Defendant filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  (ECF No. 13, Motion to Dismiss; *see* ECF No. 14, Memorandum in Support ("Def. Mem."); ECF No. 17, Reply in Support.)  Plaintiff opposed the motion.

3

(ECF No. 16, Memorandum in Opposition ("Pl. Opp.").)  After briefing of the motion to dismiss was complete, Defendant filed two letters notifying the court of additional case law addressing similar issues to those presented in this case.  (*See* ECF Nos. 19, 20.)

### **Legal Standard for Rule 12(b)(6) Motions**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.

The "court must accept as true all of the allegations contained in a complaint," but the court need not accept a plaintiff's "legal conclusions."  *Id.*  Where the factual allegations, even accepted as true, do not plausibly suggest unlawful conduct, the plaintiff's complaint must be dismissed upon the defendant's motion.  *Id.* at 679-80.

4

**Discussion**

I. **Choice-of-Law**

At the outset, the court must determine the appropriate state law to apply when considering Plaintiff's claims. Defendant asserts that New York law applies (Def. Mem. at 6 n.2), whereas Plaintiff does not specifically address the choice-of-law issue.

Federal courts in New York exercising diversity jurisdiction over state law claims apply New York choice-of-law rules. *See Maryland Cas. Co. v. Cont'l Cas. Co.*, 332 F.3d 145, 151 (2d Cir. 2003). In determining the appropriate law to apply in contract disputes, New York courts look to the "center of gravity" of the contract, which includes "a spectrum of significant contacts, including the place of contracting, the places of negotiation and performance, the location of the subject matter, and the domicile or place of business of the contracting parties." *AEI Life LLC v. Lincoln Benefit Life Co.*, 892 F.3d 126, 135 (2d Cir. 2018) (quotations omitted). The "place of contracting and place of performance are given the greatest weight." *Id.*

Here, although South Brooklyn Dentist is a New Jersey corporation, its principal place of business is in New York. (Compl. ¶ 1.) The Policy does not purport to cover any property or business activity located anywhere other than South Brooklyn

Dentist's location in New York. (*See generally* Policy.) Although the Policy does not contain a specific choice-of-law provision, it does contain references to New York law. (*See, e.g., id.* at -004.) And it was an executive order issued by the Governor of New York that allegedly caused the disruption of Plaintiff's business, which led to Plaintiff's claim for coverage under the Policy. (Compl. ¶ 7.) Accordingly, the court finds that New York is the "center of gravity" of the contract at issue, and the court thus agrees with Defendant that New York law applies.

## II. Coverage for Loss of Business Income "Caused by Direct Physical Loss of or Physical Damage to Property"

"To state a claim for breach of contract under New York law, 'the complaint must allege: (1) the formation of a contract between the parties; (2) performance by the plaintiff; (3) failure of [the] defendant to perform; and (4) damages." *Orlander v. Staples, Inc.*, 802 F.3d 289, 294 (2d Cir. 2015) (quoting *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 142 (2d Cir.2011)). Plaintiff alleges each of the first two elements necessary to state a claim for breach of contract: that the parties formed a valid contract, and that Plaintiff performed its obligations under the contract. (*See* Compl. ¶¶ 3, 6.) Defendant does not dispute either of the first two elements; rather, the parties dispute whether Plaintiff stated a claim

regarding Defendant's failure to perform its obligations under the contract. Resolution of this issue turns on the court's interpretation of Defendant's obligations under the Policy.

Under New York law, "an insurance contract is interpreted to give effect to the intent of the parties as expressed in the clear language of the contract." *Vill. of Sylvan Beach, N.Y. v. Travelers Indem. Co.*, 55 F.3d 114, 115 (2d Cir. 1995). If the contract language is "clear and unambiguous," courts will simply enforce the contract "as written." *Id.* On the other hand, "if the policy language is ambiguous, . . . the ambiguity must be interpreted in favor of the insured." *Id.* "Contract language is ambiguous if it is reasonably susceptible of more than one interpretation, and a court makes this determination by reference to the contract alone." *Burger King Corp. v. Horn & Hardart Co.*, 893 F.2d 525, 527 (2d Cir. 1990).

Defendant argues that the language of the Policy was clear, and required it to provide coverage only if there was a business interruption resulting from damage to Plaintiff's physical property. (*See* Def. Mem. at 6-7.) Plaintiff argues that the Policy was ambiguous, as it did not specify that any structural damage to the property was required. (*See* Pl. Opp. at 5.) Plaintiff also argues, in the alternative, that even if the language was clear and structural damage was required,

7

Plaintiff suffered such damage because the coronavirus that causes COVID-19 was physically present at South Brooklyn Dentist, which constituted physical damage to the premises. (*See id.* at 6.)

The court agrees with Defendant that the language of the Policy was clear and unambiguous, and required coverage only in the event of some physical harm to property, which was not present here. The Policy stated that, in order for coverage to be required, the loss of business income "must be caused by direct physical loss of or physical damage to property . . . ." (Policy at -039.) The word "physical" appears in this sentence twice, modifying both "loss" and "damage." The plain language of "physical loss of . . . property" does not mean, as Plaintiff argues, a loss of the ability to run the business. A "physical loss" means that physical property suffered a loss. Plaintiff, however, does not allege that its loss of income was caused by any physical property suffering a loss, in value or otherwise. Similarly, "physical damage to property" can only mean that the physical property suffered some sort of physical damage. *See DeMoura v. Cont'l Cas. Co.*, No. 20-cv-2912 (NGG), 2021 WL 848840, at *5 (E.D.N.Y. Mar. 5, 2021) ("New York courts have consistently understood identically worded insurance clauses to exclude business interruption losses from coverage when the losses were not caused by real, tangible damage to or loss of

8

the property."); *Michael Cetta, Inc. v. Admiral Indem. Co.*, No. 20-cv-4612 (JPC), 2020 WL 7321405, at *6 (S.D.N.Y. Dec. 11, 2020) ("The plain meaning of the phrase 'direct physical loss of or damage to' therefore connotes a negative alteration in the tangible condition of property.").

Plaintiff counters that this interpretation treats the words "loss" and "damage" as if they are the same, rendering the language redundant, and so "loss" must mean something other than structural damage. (*See* Pl. Opp. at 5.)  Plaintiff's interpretation, however, ignores the word "physical" immediately before the word "loss."  Moreover, the use of both "physical loss" and "physical damage" in the Policy was not redundant. The word "'loss' may refer [to] 'the disappearance or diminution of value.'" *DeMoura*, 2021 WL 848840, at *6 (quoting Black's Law Dictionary (11th ed. 2019)).  "Read together with the modifier 'physical,' the phrase 'physical loss of or damage to property' in this context plainly covers two scenarios: one where 'physical loss' occurs—which naturally refers to a situation where the value of the property as a whole 'disappear[s]' or 'dimin[ishes]'—and one where 'damage' occurs—that is, where the property is harmed but not destroyed." *Id.*  Thus, "physical loss" and "physical damage" are separate concepts, and the Policy's requiring of one or the other was not redundant.

9

"[N]early every court to address this issue has concluded that loss of use of a premises due to a governmental closure order does not trigger business income coverage premised on physical loss to property." *Michael Cetta*, 2020 WL 7321405, at *8 (collecting cases). This court agrees with the great weight of authority, and finds that Plaintiff cannot state a claim for breach of contract or for a declaratory judgment, due to the clear and unambiguous language of the Policy.

Plaintiff's alternative contention, that the presence of the coronavirus at South Brooklyn Dentist constituted damage to the premises, is also unavailing. First, the presence of the virus at South Brooklyn Dentist was never alleged in the complaint. Rather, this new fact was raised for the first time in an affidavit filed with Plaintiff's opposition to Defendant's motion to dismiss. The court cannot consider a fact raised in such a manner, because "it is improper for a court to consider declarations and affidavits on a motion to dismiss." *Novie v. Vill. of Montebello*, No. 10-cv-9436 (CS), 2012 WL 3542222, at *9 (S.D.N.Y. Aug. 16, 2012) (citing cases).

In any event, this new fact is immaterial, because even if the court were to consider it, it would not trigger coverage under the Policy, which clearly required coverage only

10

if there was "physical damage" to physical property.[3] Though the virus has the potential to cause significant harm to people, the court is not aware of any scenario in which its presence can cause "physical damage" to property such as a building, or other inanimate objects. The Centers for Disease Control and Prevention advise that when the coronavirus is physically present on a surface, it will "naturally die within hours to days."[4] The presence of the virus at Plaintiff's premises would thus have been short-lived, and it could not constitute "physical damage to property" under the plain language of the Policy. *See DeMoura*, 2021 WL 848840, at \*6 ("no allegations that the potential presence of the virus caused 'physical harm' to [the] property").

Plaintiff also argues that the Policy was an "all-risk policy," which, under New York law, covers "losses caused by *any* fortuitous peril not specifically excluded under the policy . . . ." *Parks Real Est. Purchasing Grp. v. St. Paul Fire & Marine Ins. Co.*, 472 F.3d 33, 41 (2d Cir. 2006) (emphasis in

---

[3] Plaintiff points out that the Policy's definition of a "Covered Property" was broad, and included more than just "the actual structure that houses the dental office . . . ." (Pl. Opp. at 10-11.) Even if the definition covered more than just the physical building, it cannot be read in any way that alters the requirement for Plaintiff's property to have suffered a "physical loss" or "physical damage," which it did not.

[4] *Guidance for Cleaning and Disinfecting*, U.S. ENVIRONMENTAL PROTECTION AGENCY AND CENTERS FOR DISEASE CONTROL AND PREVENTION (Sept. 16, 2020), at 2, https://www.cdc.gov/coronavirus/2019-ncov/community/pdf/REopening_America_Guidance.pdf.

11

original); (*see* Pl. Opp. at 3-4). But Plaintiff's argument dramatically overstates the scope of coverage provided under such a policy. An all-risk property insurance policy is "designed to compensate [the insured] for damage to its own *property*." *Parks Real Est. Purchasing Grp.*, 472 F.3d at 41 (emphasis added). Thus, the "fortuitous peril" must still relate to property damage, which, as discussed, Plaintiff's claim did not. Plaintiff's argument that the Policy should cover *any* loss of business income not specifically excluded in the Policy would require Hartford Insurance to cover virtually every conceivable loss that a business could face, so long as the cause was not specifically excluded in the Policy.[5]

Therefore, the court finds that Plaintiff cannot plausibly state a claim for relief based on its loss of business income as a result of the COVID-19 pandemic. Though the pandemic has been a devastating event for Plaintiff's business and many other businesses, the business interruption was not caused by a physical loss of or physical damage to property.

---

[5] Plaintiff also relies on the Policy's definition of a "Covered Cause of Loss," which specifically excluded certain losses that would be covered, and which did not exclude a pandemic. (*See* Pl. Opp. at 6-7.) The definition of a "Covered Cause of Loss," however, still required the loss to be a "DIRECT PHYSICAL LOSS" in order for it to be covered. (Policy at -031.) As discussed at length by now, the loss alleged by Plaintiff was not a physical loss.

12

### III. Coverage Pursuant to "Civil Authority" Provision

Plaintiff also attempts to state a claim pursuant to the Policy's civil authority provision, which provided coverage in the event that access to Plaintiff's premises was "specifically prohibited by order of a civil authority as the direct result of a Covered Cause of Loss to property in the immediate area of [South Brooklyn Dentist's] 'scheduled premises'." (Policy at -040.)  Plaintiff alleges that the Governor of New York prohibited access to its premises, thus triggering coverage under this provision of the Policy. (Compl. ¶¶ 20, 24.)  Defendant argues that the executive orders treated dental offices as "essential," and thus the executive orders did not prohibit access to or operation of Plaintiff's dental business. (*See* Def. Mem. at 14-15.)

The court need not consider matters beyond the complaint to resolve this issue.  Regardless of whether the Governor of New York prevented access to Plaintiff's premises due to the COVID-19 pandemic, insurance coverage was still not available under the clear and unambiguous language of the Policy.  The Policy applied only when a civil authority restricted access "as the direct result of a Covered Cause of Loss to property in the immediate area" of the premises. (Policy at -040.)  Plaintiff has not alleged that any executive

13

order issued by the Governor of New York was the "direct result" of a loss to any property in Plaintiff's immediate area.

Again, other courts have likewise rejected claims based on similar language in insurance contracts. *See, e.g., Food for Thought Caterers Corp. v. Sentinel Ins. Co., Ltd.*, No. 20-cv-3418 (JGK), 2021 WL 860345, at *6 (S.D.N.Y. Mar. 6, 2021) ("the Amended Complaint fails to allege that the civil authority orders prohibiting access to the plaintiff's property were caused by risks of direct physical loss to property in the surrounding area"); *Michael Cetta*, 2020 WL 7321405, at *11 ("the Complaint fails to allege any specific damage to property near" the plaintiff's business); *10012 Holdings, Inc. v. Sentinel Ins. Co., Ltd.*, No. 20-cv-4471 (LGS), 2020 WL 7360252, at *4 (S.D.N.Y. Dec. 15, 2020) ("the Complaint does not allege that these closures of *neighboring* properties 'direct[ly] result[ed]' in closure of Plaintiff's *own* premises") (emphasis in original). This court agrees that the plain language of the civil authority provision at issue here did not cover the circumstances alleged in the complaint.

Accordingly, Plaintiff has failed to plausibly allege Defendant's liability under any provision of the Policy, and Defendant's motion to dismiss is granted.

## Conclusion

For the foregoing reasons, Defendant's motion to dismiss is GRANTED, and Plaintiff's complaint is DISMISSED with prejudice, because any amendment to the complaint would be futile. Under the clear and unambiguous language of the Policy, Plaintiff cannot state a claim for relief.

The Clerk of Court is directed to enter judgment for Defendant and to close the case.

**SO ORDERED.**

Dated: Brooklyn, New York
March 22, 2021

/s/
Hon. Kiyo A. Matsumoto
United States District Judge